David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*IRMA RODRIGUEZ*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| IRMA RODRIGUEZ,<br><br>           Plaintiff,<br>v.<br><br>YOUR FIRST CHOICE, LLC D/B/A FIRST CHOICE PAYDAY LOAN,<br><br>           Defendant. | Civil Action No.: _____<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff, IRMA RODRIGUEZ, by undersigned counsel, states as follows:

## **JURISDICTION**

1. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone

without consent, thereby violating the TCPA.

2. This action also arises out of Defendant's violations of Nevada Revised Statutes Chapter 604A.010 *et seq*. ("NRS 604A"), and the harassment of Plaintiff by the Defendant and its agents in their illegal efforts to collect a high-interest loan as defined under this Chapter.

3. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4. Defendants have through their conduct in collecting a loan governed by NRS 604A violated NRS 604A.415.

5. Defendant YOUR FIRST CHOICE, LLC D/B/A FIRST CHOICE PAYDAY LOAN is a "licensee" as that term is defined by NRS 604A.

6. NRS 604A.415 incorporates the Fair Debt Collection Practices Act (FDCPA), as amended, 15 U.S.C. §§ 1692a to 1692j, which applies herein "even if the licensee is not otherwise subject to the provisions of the [FDCPA]."

7. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of

the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

9. The Plaintiff, IRMA RODRIGUEZ ("Plaintiff" or "Mrs. Rodriguez"), is an adult individual residing in Las Vegas, Nevada.

10. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11. Defendant YOUR FIRST CHOICE, LLC D/B/A FIRST CHOICE PAYDAY LOAN ("Defendant" or "FIRST CHOICE"), is doing business in the State of Nevada.

12. FIRST CHOICE is also licensed as a "Deferred Deposit Loans, High-interest loans, Title Loans and Check-Cashing" business with the State of Nevada, Dept. of Business & Industry ("FID") and has a License No. CDTH11150 with the FID.

13. Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

14. FIRST CHOICE at all times acted by and through one or more of the Collectors.

…
…
…

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A. The Debt

15. Plaintiff allegedly incurred a financial obligation (the "Debt") to FIRST CHOICE (the "Creditor" or "FIRST CHOICE").

16. The Debt was a "high-interest loan" as defined by NRS 604A.0703.

17. NRS 604A.415 provides that:

> If a customer defaults on a loan, the licensee may collect the debt owed to the licensee only in a professional, fair and lawful manner. When collecting such a debt, the licensee must act in accordance with and must not violate sections 803 to 812, inclusive, of the federal Fair Debt Collection Practices Act, as amended, 15 U.S.C. §§ 1692a to 1692j, inclusive, even if the licensee is not otherwise subject to the provisions of that Act.

18. As such, a violation of the Fair Debt Collection Practices Act (FDCPA) a though j is also a violation of NRS 604A.415.

### B. FIRST CHOICE Engages in Harassment and Abusive Tactics

### FACTS

19. Within the two years prior filing the instant complaint, the Plaintiff obtained a pay day loan from FIRST CHOICE.

20. Plaintiff made her payments on time to FIRST CHOICE and FIRST CHOICE offered to renew her loan in February 2016.

21. However, the Plaintiff subsequently lost her employment in March

2016 and defaulted on the Debt.

22. Thereafter, FIRST CHOICE began collection on the defaulted Debt.

23. FIRST CHOICE placed calls on a daily basis to the Plaintiff to collect the Debt after the plaintiff's default in March 2016.

24. During the collection calls that the Plaintiff answered, the Plaintiff advised FIRST CHOICE on several occasions that she lost her employment and was not in a position to repay the loan.

25. The Plaintiff however offered to make payment arrangements of $20 per week despite her lack on incoming income.  However, FIRST CHOICE flatly rejected the Plaintiff's offers and demanded immediate repayment in full or making installment payments of at least $183 per month until the Debt was fully satisfied.

26. Plaintiff advised FIRST CHOICE that she could not afford $183 per month and would contact FIRST CHOICE when and if she was in a position to make payments on the Debt.

27. The Plaintiff further requested that FIRST CHOICE cease calling her until she was in position to repay the Debt at which time she would call FIRST CHOICE.

28. However, FIRST CHOICE continued placing calls to the Plaintiff's cellular telephone at least two to three times on a daily basis despite the Plaintiff's

foregoing efforts to restrict FIRST CHOICE's collection calls.

29. Plaintiff answered numerous calls from FIRST CHOICE and reiterated the above. However, FIRST CHOICE would disregard her efforts to limit the communications and stated to the Plaintiff, "[y]ou took out this loan and we are going to get the money one way or another."

30. Making matters worse, FIRST CHOICE called the Plaintiff's cell phone from several different unidentified or unknown numbers causing the Plaintiff to answer FIRST CHOICE's collection calls she may otherwise have been able to ignore, but for FIRST CHOICE's "spoofing" ruses. This caused the Plaintiff to suffer significant distress, since she was unable to identify calls she wanted to answer from collection calls she sought to restrict.

31. Compounding her frustrations, in late August or early September 2016, FIRST CHOICE began sending representatives to stalk Plaintiff at her residence.

32. On several occasions (often more than once per week during September 2016), the Plaintiff arrived home to find a FIRST CHOICE representative waiting for her at her doorsteps.

33. The FIRST CHOICE representative would then hand the Plaintiff a collection letter and interrogate the Plaintiff demanding repayment of the Debt stating, among other things: "why aren't you making payments?" and "we will

keep coming to your house until you repay the money you owe FIRST CHOICE. When are you going to make payments?"

34. The Plaintiff, who has a four (4) year old son in her home, was horrified to find FIRST CHOICE's representatives lurking around her home.  She was in fear for both herself and her four year old son and advised FIRST CHOICE as much.

35. Specifically, the Plaintiff called FIRST CHOICE and demanded that it never send anyone to her home again to collect the Debt.

36. However, during the month of September 2016, FIRST CHOICE continued sending its representatives to her home to stalk and wait for her reiterating the above collection demands despite the Plaintiff's protestations of such collection tactics.

37. The Plaintiff continued calling FIRST CHOICE requesting that they cease sending its representatives to her home and advised FIRST CHOICE that she had an infant at her home who was terrified by these collection efforts.

38. FIRST CHOICE's representatives callously disregarded the Plaintiff's efforts to restrict collection efforts and continued sending its representatives to accost her in front of her home, thereby terrorizing both the Plaintiff and her scared infant.

39.  During one conversation in which the Plaintiff begged FIRST

CHOICE to cease the above conduct, FIRST CHOICE's representative named "Jenny" advised the Plaintiff that FIRST CHOICE would continue sending a collection representative to her home until the Debt was paid in full.

40. Jenny further advised the Plaintiff that "You owe us the money and we are going to collect our money and keep sending someone to your home until you pay us".

41. The Plaintiff advised Jenny that she felt harassed, scared and was concerned for her infant son and would seek legal advice unless this harassment ceased. Jenny imperiously responded that "you can do anything you want to do, but we are going to keep sending someone to your house until we get paid what you owe."

42. True to FIRST CHOICE's words, the Plaintiff continued being stalked at her home after the above call by a FIRST CHOICE representative seeking to collect the Debt.

43. This lawsuit results.

## C. **Plaintiff Suffered Actual Damages**

44. The Plaintiff has suffered and continues to suffer actual damages as a result of FIRST CHOICE's unlawful conduct.

45. Further, Plaintiff alleges that Defendants actions at all times herein were "willful."

As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, fear, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal collection efforts.  Plaintiff has also lost the use of personal and family time while enduring these frustrations.  The harassing conduct further caused the Plaintiff to suffer from backaches, neck aches and shoulder aches from the stress.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

46. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

47. The TCPA regulates, among other things, the use of automated telephone dialing systems.

48. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)  to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)  to dial such numbers.

49. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

50. According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognized that wireless customers are charged for incoming calls.[1]

51. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

52. On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id*. at ¶ 30.

53. Further, consumers (like the Plaintiff) may revoke consent through any reasonable means. *Id*. at ¶ 47.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

54. Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent. *Id*. at ¶ 58.

55. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

56. Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *Id*. at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL TCPA COUNTS

57. Within the four years prior to filing the instant complaint, the Plaintiff received numerous calls from the Defendant.

58. Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

59. Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "0596" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A). Specifically, there were slight pauses before each call connected.

60. In late August to early September 2016, Plaintiff instructed Defendant or its agent(s) not to call the Plaintiff's cell phone ever again thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

61. However, Defendant placed calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

62. Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

63. The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

64. Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

65. Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

66. The Plaintiff suffered actual harm and loss, since the unwanted calls depleted the Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm. While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

67. Plaintiff also suffered from an invasion of a legally protected interest by placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy. The TCPA protects consumers from this precise behavior.

68. Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

69. Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls to the Plaintiff's phone line without any consent to do so.

70. The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

## COUNT I

### Violations of the FDCPA
### (as incorporated through NRS 604A.415)

71. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. Any violation of 15 U.S.C. §§ 1692a through j constitutes a violation of NRS 604A.415.

73. The Defendants' conduct violated 15 U.S.C. § 1692c(a)(1) in that Defendant contacted the Plaintiff at an unusual time or place or at a time or place

known to be inconvenient for the consumer, before 8:00AM or after 9:00 PM.

74.     The Defendants' conduct violated 15 U.S.C. § 1692d in that Defendants engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.

75.     The Defendants' conduct violated 15 U.S.C. § 1692d(5) in that Defendant caused Plaintiff's phone to ring repeatedly or engaged the Plaintiff in repeated conversations in connection with the collection of a debt.  Specifically, by calling the plaintiff's phone multiple times per day on a daily basis even after she advised the Defendant that she could not pay the Debt and would call the Defendant when she was in a position to do so.

76.     The Defendants' conduct violated 15 U.S.C. § 1692d(6) in that Defendant placed calls to the Plaintiff without disclosing the Defendant's identity in connection with the collection of a debt.  Specifically, Defendant "spoofed", blocked, or otherwise changed in numbers to the prevent the plaintiff from identifying FIRST CHOICE's calls on her caller ID.

77.     The Defendants' conduct violated 15 U.S.C. § 1692e in that Defendants engaged in false, deceptive or misleading behavior in connection with the collection of a debt.

78.     The Defendant's conduct violated 15 U.S.C. § 1692e(5) in that Defendants threatened to take action against the Plaintiff which it could not legally

take or did not intend to take in collection of a debt. For example, FIRST CHOICE misrepresented that Plaintiff could restrict the manner of FIRST CHOICE's collection efforts; or, terminate FIRST CHOICE's ability to communicate with her to collect the Debt pursuant 15 U.S.C. § 1692c.

79. The Defendant's conduct violated 15 U.S.C. § 1692e(10) in that Defendants employed various false representations and deceptive means to collect a debt.

80. The Defendants' conduct violated 15 U.S.C. § 1692f in that Defendants used unfair and unconscionable means to collect a debt and attempted to humiliate and belittle Plaintiff.

81. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA (and therefore also constitute violations of NRS 604A.415), including every one of the above-cited provisions.

82. The Plaintiff is entitled to damages as a result of Defendants' violations.

83. The Plaintiff has been required to retain the undersigned as counsel to protect the Plaintiff's legal rights to prosecute this cause of action, and is therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## COUNT II

**Negligent Violations of the
Telephone Consumer Protection Act,**

**(47 U.S.C. § 227, *et seq*.)**

84. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

85. Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

86. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

87. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

88. Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

**Knowing and/or Willful Violations of the
Telephone Consumer Protection Act,
(47 U.S.C. § 227, *et seq*.)**

89. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

90. Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

91. Each of the aforementioned calls by Defendant constitutes a knowing

and/or willful violation of the TCPA.

92. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

93. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendants awarding the Plaintiff:

1. for consequential damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

2. for statutory damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

3. for an award of actual damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

4. for an award of punitive damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

5. for an award of costs of litigation and reasonable attorney's fees pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

6. "void" the Debt, bar Defendant from collecting thereon, and compel the Defendant to turnover any principal, interest or other charges or fees collected on the Debt pursuant to NRS 604A.900(1).

7. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

8. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

9. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

10. any other legal or equitable relief that the court deems appropriate.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 20, 2016

        Respectfully submitted,
        By: /s/ David H. Krieger, Esq.
        David H. Krieger, Esq.
        Nevada Bar No. 9086
        HAINES & KRIEGER, LLC
        8985 S. Eastern Avenue, Suite 350
        Henderson, Nevada 89123
        Phone: (702) 880-5554
        FAX: (702) 385-5518
        Email: dkrieger@hainesandkrieger.com

        Attorney for Plaintiff
        *IRMA RODRIGUEZ*