UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

IRMA RODRIGUEZ,

        Plaintiff,

    v.

YOUR FIRST CHOICE, LLC d/b/a FIRST CHOICE PAYDAY LOAN,

        Defendant.

Case No. 2:16-cv-02447-APG-CWH

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(ECF No. 22)

        Plaintiff Irma Rodriguez obtained a payday loan from defendant Your First Choice, LLC (First Choice). She defaulted on the loan, and First Choice attempted to collect on the debt. In response to these attempts, Rodriguez sued First Choice for alleged violations of Nevada's debt collection practices statute. Rodriguez learned as part of discovery that First Choice obtained her credit report after it answered the initial complaint. Rodriguez then filed an amended complaint, alleging First Choice violated the Fair Credit Reporting Act (FCRA).

        First Choice moves to dismiss or for summary judgment. Because both parties rely on discovery responses in addition to the pleadings, I treat the motion as one for summary judgment. First Choice argues that it cannot be held liable for its debt collection practices because it is not covered by the federal Fair Debt Collections Practices Act (FDCPA), which is incorporated into the Nevada statute. First Choice also argues that Rodriguez consented to First Choice obtaining her credit report, which it did for a statutorily permissible purpose. Alternatively, First Choice contends Rodriguez does not have standing to bring the FCRA claim because she has not sufficiently pleaded an injury in fact.

        Rodriguez responds that the Nevada debt collection practices statute applies to businesses such as First Choice even if they could not be held liable under the FDCPA. As to the FCRA claim, Rodriguez argues that once her complaint in this case was filed, First Choice no longer had her consent or authorization to obtain her credit report. She also argues that the report was

obtained for use in this litigation, which is not a permissible purpose under FCRA. Finally, she argues that the violation of FCRA's limitation on permissible purposes for obtaining a credit report and the invasion of her privacy are concrete injuries sufficient for Article III standing.

I deny First Choice's motion for summary judgment. First Choice has failed to show that as a matter of law it cannot be liable under the Nevada debt collection practices statute, which applies to a business like First Choice even if it would not be liable under the FDCPA. With respect to the FCRA claim, there is a genuine dispute whether First Choice obtained Rodriguez's credit report for a statutorily permissible purpose. While First Choice has shown Rodriguez consented to a credit check, it has not shown as a matter of law that this consent authorized it to obtain her credit report for an impermissible purpose. Finally, Rodriguez has alleged a sufficiently concrete injury—the violation of her legally protected interest in the privacy of her credit information—to meet the requirements for Article III standing.

## I. BACKGROUND

Rodriguez obtained a payday loan from First Choice. ECF No. 21 at 4–5.[1] First Choice is licensed in Nevada as a business engaged in "Deferred Deposit Loans, High-interest loans, Title Loans and Check-Cashing." *Id.* at 3. As part of her loan application, Rodriguez signed a document titled "Consumer Credit Disclosure – Promissory Note." ECF No. 22, Ex. A, Ex. B. This document included a "Credit Reporting" provision stating "You agree that we may make inquiries concerning your credit history and standing . . . ." *Id.*, Ex. B. After Rodriguez defaulted on the loan, First Choice attempted to collect the debt, calling her multiple times and sending representatives to her home. ECF No. 26, Ex. 1.

On October 20, 2016, Rodriguez filed suit, alleging First Choice's collection activities violated Nevada Revised Statutes § 604A.415. ECF No. 1. On January 13, 2017, First Choice answered. ECF No. 9. As part of the discovery that followed, First Choice disclosed a copy of a TransUnion credit report for Rodriguez dated January 18, 2017. *See* ECF No. 26, Ex. 2.

---

[1] While on a motion for summary judgment a complaint is typically treated as containing only allegations, because First Choice filed a motion to dismiss or for summary judgment, I cite sparingly to the complaint for context.

Thereafter, Rodriguez filed an amended complaint to add a claim alleging that by obtaining this report without a permissible purpose, First Choice violated FCRA. First Choice now moves for summary judgment on both claims.

## II. ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Herbert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### a. Nevada Revised Statutes § 604A.415[2]

Nevada Revised Statutes § 604A.415 states that "[i]f a customer defaults on a loan, the licensee may collect the debt owed to the licensee only in a professional, fair, and lawful manner. When collecting such a debt, the licensee must act in accordance with and must not violate . . . the federal Fair Debt Collection Practices Act . . . even if the licensee is not otherwise subject to the provisions of that Act." A licensee is defined in the statute as "any person who has been issued one or more licenses to operate a check-cashing service, deferred loan deposit service, high-interest loan service, or title loan service . . . ." Nev. Rev. Stat. § 604A.075.

---

[2] In the amended complaint, Rodriguez's first claim is titled "Violations of the FDCPA (as incorporated through NRS 604A.415)." ECF No. 21 at 18. Although not clearly drafted, Rodriguez appears to plead, and I will treat this as, a claim under the state statute.

The FDCPA regulates debt collection practices by debt collectors, defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" or "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person." *Id.* § 1692a(6)(A), (F).

First Choice argues that (1) it is a creditor and not a debt collector, and (2) it is attempting to collect a debt it originated. Therefore, First Choice contends, it cannot be liable under the FDCPA. However, as Rodriguez points out, the Nevada statute specifically covers licensees "even if the licensee is not otherwise subject to" the FDCPA. Nev. Rev. Stat. § 604A.415; *cf. Iorio v. Check City P'ship*, Supreme Court of Nevada Case Nos. 64180, 64365, 2015 WL 3489309, at *1 n.2 (Nev. May 29, 2015) ("[Defendant] asserts that it is not a debt collector as defined by the FDCPA but acknowledges that it is still subject to the FDCPA pursuant to NRS 604A.415(1), which explicitly mandates that licensed lending institutions are subject to 15 U.S.C. §§ 1692a to 1692j."). First Choice has not argued that it is not a licensee under Nevada law, nor has it offered any reason why the Nevada statute does not apply to it. Therefore, First Choice has not shown that it is entitled to judgment as a matter of law on this claim.

I deny First Choice's motion for summary judgment as to the claim under § 604A.415. I decline to consider First Choice's argument, raised for the first time in its reply brief, that even if the statute does apply, its practices were not abusive under the FDCPA or the state statute. *See Vazquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("[W]e do not consider issues raised for the first time in reply briefs.").

### b. Fair Credit Reporting Act

First Choice argues that it had a permissible purpose for obtaining the report under 15 U.S.C. § 1681b(a)(3)(A), which allows consumer reporting agencies to furnish a consumer

| | |
|---|---|
| 1 | report "[t]o a person which it has reason to believe . . . intends to use the information in |
| 2 | connection with a credit transaction involving the consumer on whom the information is to be |
| 3 | furnished and involving the . . . collection of an account of" the consumer. First Choice contends |
| 4 | that it obtained Rodriguez's report for account collection, a permissible purpose under the statute. |
| 5 | Additionally, First Choice argues that Rodriguez consented to its obtaining her credit |
| 6 | report when she obtained her loan. Because the consent provision has no time limitation and |
| 7 | Rodriguez's account is still open, First Choice contends her consent applies to the credit pull at |
| 8 | issue and thus there was no unauthorized disclosure of Rodriguez's report nor an invasion of her |
| 9 | privacy. Furthermore, First Choice argues that Rodriguez did not suffer a concrete injury in fact, |
| 10 | as required for Article III standing. |
| 11 | Rodriguez responds that First Choice violated FCRA by obtaining her credit report to use |
| 12 | in this litigation, an impermissible purpose. She also argues that after her initial complaint in this |
| 13 | case was filed she "had no account or business transaction" with First Choice so any prior consent |
| 14 | was no longer valid. ECF No. 26 at 12. Thus, she contends, this impermissible credit pull was an |
| 15 | invasion of her privacy. |

*1. Permissible purpose*

Section 1681b(a) of FCRA states that in general, "any consumer reporting agency may furnish a consumer report under the following circumstances and no other," before listing several permissible purposes for obtaining or disclosing consumer reports. 15 U.S.C. § 1681b(a). Using the report in support of litigation is not among the listed permissible purposes. *See id.*; *see also Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (finding that using a credit report in litigation is not a "legitimate business need" under the statute and thus not a permissible purpose (citing 15 U.S.C. § 1681b(3)(E))). A person who obtains a report for anything other than a listed purpose violates the statute. *See Mone*, 945 F.2d at 307 (holding that a "consumer whose credit report is obtained for reasons other than those listed in the statute may recover actual and punitive damages . . . .").

First Choice manager Janie Chavez testified in her deposition that the report was obtained because First Choice had "lost contact" with Rodriguez and was trying "to locate [her] and find out what's going on." ECF No. 26, Ex. 1. Rodriguez argues this cannot be the case, as First Choice had called both her and her references and visited her house multiple times, so it clearly knew where she lived and was in contact with her. Furthermore, the report was obtained after Rodriguez's initial complaint was filed, so First Choice was aware she was represented by counsel and had counsel's contact information. There is a genuine dispute as to the purpose for which First Choice obtained Rodriguez's credit report. Drawing all inferences in favor of Rodriguez, a reasonable jury could find First Choice obtained Rodriguez's report for use in this litigation, which is not a permissible purpose under 15 U.S.C. § 1681b.

*2. Consent*

First Choice has met its initial burden of showing that Rodriguez consented to it obtaining her credit report. ECF No. 22 at 25; *see also id.*, Ex. B. Rodriguez does not deny she signed the form that included the consent provision. Nor does she cite any law to support her contention that by filing her complaint against First Choice, she terminated her account and the initial consent was no longer valid. She is in default on the loan, but has not discharged it in bankruptcy or otherwise terminated her account.

But even if Rodriguez consented, First Choice has not shown that as a matter of law this consent effectively waived the statutory requirement of a permissible purpose for obtaining the report. First Choice points only to the signed disclosure form but no law to support its contention that even if it did not have a permissible purpose in obtaining the credit report, its action was authorized by Rodriguez's consent to a credit check to obtain a loan. It is not clear that consent to a credit pull for a permissible purpose (such as the extension of credit) also authorizes a credit pull for a statutorily impermissible purpose. Congress limited the permissible reasons to furnish or obtain a credit report in § 1681b, and First Choice has not sufficiently shown that these limits can be waived by a consent provision in a loan application form. First Choice therefore has not

proven that Rodriguez's consent entitles First Choice to judgment as a matter of law on her FCRA claim.

### 3. Article III Standing

Under Article III, a plaintiff must have standing to sue, a requirement rooted in the limit of judicial power to decide cases or controversies. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (internal quotation omitted). At issue here is only the first element: injury in fact.

To establish injury in fact, a plaintiff must show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The injury must personally affect the plaintiff and must actually exist. *Id.* Intangible injuries can be concrete, and to determine whether this is the case, I look to history and congressional judgment. *Id.* at 1549.

With respect to history, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit . . . ." *Id.* As to congressional judgment, Congress "is well positioned to identify intangible harms that meet minimum Article III requirements" and "may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate at law." *Id.* (internal quotations omitted). While "Article III standing requires a concrete injury even in the context of a statutory violation," a "risk of real harm" can satisfy the concreteness requirement and "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.*

On remand of the *Spokeo* case, the Ninth Circuit adopted the Second Circuit's formulation of concreteness standards for procedural violations: "an alleged procedural violation of a statute can by itself manifest concrete injury where Congress conferred the procedural right to protect a

| | |
|---|---|
| 1 | plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that |
| 2 | concrete interest." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (quoting *Strubel v.* |
| 3 | *Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)).  Thus, I must determine "(1) whether the |
| 4 | statutory provisions at issue were established to protect [Rodriguez's] concrete interests . . . and if |
| 5 | so, (2) whether the specific procedural violations alleged in this case actually harm, or present a |
| 6 | material risk of harm to, such interests." *Id.* |
| 7 |      "Congress enacted FCRA . . . to ensure fair and accurate credit reporting, promote |
| 8 | efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, |
| 9 | 551 U.S. 47, 52 (2007).  To achieve these purposes, Congress required the use of reasonable |
| 10 | procedures in procuring a credit report and limited the furnishing and obtaining of these reports to |
| 11 | specific statutorily enumerated purposes. *See TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). |
| 12 | FCRA was enacted in part to "combat unnecessary and unwanted invasions of consumer |
| 13 | privacy," and Congress established limitations on credit report inquiries, recognizing the concrete |
| 14 | harm that arises from improper inquiries. *In re Ocwen Loan Servicing LLC Litig.*, 240 F. Supp. 3d |
| 15 | 1070, 1076 (D. Nev. 2017); *see also Maldonado v. HSBC Mortg. Sys., Inc.*, No. 2:16-cv-00784- |
| 16 | JAD-VCF, 2017 WL 3496460, at *3–4 (D. Nev. Aug. 15, 2017); *Kruckow v. Merchants Bank*, |
| 17 | No. 17-2418 (DWF/DTS), 2017 WL 3084391, at *3 (D. Minn. Jul. 19, 2017) (collecting cases |
| 18 | finding the allegation of obtaining a consumer's credit report without a permissible purpose to be |
| 19 | a concrete injury sufficient for Article III standing).  The fact that Congress created a private right |
| 20 | of action and provided for statutory damages "clearly illustrates that Congress believed that the |
| 21 | violation of FCRA causes a concrete harm to consumers," even if the harm is intangible. *In re* |
| 22 | *Horizon Healthcare Svcs. Inc. Data Breach Litig.*, 846 F.3d 625, 639 (3d Cir. 2017); *see also Witt* |
| 23 | *v. Corelogic Saferent, LLC*, No. 3:15-cv-386, 2016 WL 4424955, at *12 (E.D. Va. Aug. 18, |
| 24 | 2016) ("[Section] 1681b(a) creates a legally protected privacy interest in limiting dissemination |
| 25 | of consumers' reports to circumstances falling within the 'permissible purposes' enumerated in |
| 26 | that section.").  Congress created a legally protected interest in consumer privacy with respect to |
| 27 | |
| 28 | |

credit information, and when this information is acquired for an impermissible purpose, that legally protected interest is concretely harmed.

Additionally, the interests that FCRA protects "resemble other reputational and privacy interests that have long been protected in the law." *Robins*, 867 F.3d at 1114; *see also In re Horizon Healthcare*, 846 F.3d at 638–39; *Witt*, 2016 WL 4424955, at *12 (stating the "common law has long recognized a right to personal privacy" and noting the Supreme Court has observed that "the right to privacy in compilations of personal information is particularly powerful" (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763, 765 (1989))). Differences between FCRA causes of action and those recognized at common law are not fatal, as "the relevant point is that Congress has chosen to protect against a harm that is at least closely similar *in kind* to others that have traditionally served as the basis for lawsuit." *Robins*, 867 F.3d at 1115 (emphasis in original).

In light of these considerations, the FCRA provision at issue is meant to protect consumers' concrete interest in the privacy of their personal credit information. Moreover, Rodriguez "has alleged FCRA violations that actually harm, or at least that actually create a 'material risk of harm' to, this concrete interest." *Id*. She has alleged that First Choice obtained her credit report for an impermissible purpose. This claim implicates her concrete interest in the privacy of her personal credit information, the very interest Congress intended to protect through § 1681b. *See, e.g., In re Ocwen*, 240 F. Supp. 3d at 1076. As such, Rodriguez has alleged a concrete injury sufficient for Article III standing.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant First Choice's motion for summary judgment **(ECF No. 22) is DENIED.**

DATED this 25th day of October, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE