Andrew H. Pastwick, ESQ.
Nevada Bar No. 009146
LAW OFFICE OF ANDREW H. PASTWICK L.L.C.
1810 E. Sahara Avenue, Suite 120
Las Vegas, Nevada 89104
Tel: (702) 866-9978
Fax: (702) 369-1290
E-mail: apastwick@pastwicklaw.com
Attorney for Defendant
Your First Choice, LLC d/b/a
First Choice Payday Loan

# UNITED STATE DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| IRMA RODRIGUEZ, | ) |
| | ) Civil Action No.: 2:16-cv-02447 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| YOUR FIRST CHOICE, LLC D/B/A | ) |
| FIRST CHOICE PAYDAY LOAN; | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT YOUR FIRST CHOICE, LLC D/BA FIRST CHOICE PAYDAY LOAN'S TRIAL BRIEF

DATE OF TRIAL: <u>April 23, 2018</u>
TIME OF TRIAL: <u>9:00 a.m.</u>

COMES NOW Defendant YOUR FIRST CHOICE, LLC D/B/A FIRST

CHOICE PAYDAY LOAN, by and through the Law Office of Andrew H.

Pastwick, LLC, hereby files this Trial Brief.  This Trial Brief is based upon the

pleadings and papers annexed hereto and any such discussions as the Court may

entertain at the time of the trial.  Defendant reserves the right to file a supplemental

trial brief to address any issues that arise during the trial

DATED this 16th day of April, 2018

LAW OFFICE OF ANDREW H. PASTWICK
L.L.C.

By: /S/ Andrew H. Pastwick
　　Andrew H. Pastwick, Esq.
　　Nevada Bar No. 009146
　　1810 E. Sahara Avenue, Suite 120
　　Las Vegas, Nevada 89104
　　(702) 866-9978
　　Attorney for Defendant Your First Choice
　　d/b/a First Choice Payday Loan

# I
## STATEMENT OF FACTS

This case concerns a defaulted promissory note.  On or about March 22, 2016, Plaintiff IRMA RODRIQUEZ (hereinafter "RODRIQUEZ") borrowed Five Hundred Dollars ($500.00) from Defendant FIRST CHOICE LOANS (hereinafter "FIRST CHOICE").  To borrow this money from Defendant FIRST CHOICE, Plaintiff RODRIQUEZ was required to read and execute a series of documents including the Consumer Credit Disclosure – Promissory Note.[1]

In order to borrow this money from Defendant FIRST CHOICE, Plaintiff RODRIQUEZ was required to read and execute a series of documents including the Consumer Credit Disclosure – Promissory Note and a Verify your Cell Phone Number.  Pursuant to these agreements, Plaintiff RODRIQUEZ agreed to the following terms:

> I promise to pay the Total of Payments to the order of You, the Lender.  I will make the payments at your addresses above.  I will make the payments on the dates and in the amounts shown in the Payment Schedule.  If an installment payment remains unpaid 10 days or more after the due date, the you may charge Me a late fee of not more than $15.00, payable on a one-time basis, for any such installment payment.  **If I make a late payment or fail to meet my obligations as agreed in this contract, You may report this information to credit bureaus**.[2]
>
> ***
>
> Credit Reporting. **You agree that we may make inquires**

---

[1]     Consumer Credit Disclosure- Promissory Note, attached as Exhibit "A".
[2]     Consumer Credit Disclosure- Promissory Note, attached as Exhibit "A".

**concerning your credit history and standing,** and we may report information concerning your performance under this Agreement to credit reporting agencies.[3]

\*\*\*

Telephone Calls – Monitoring- **You agree that if you are past due or in default, you will accept calls from us or a third party we have contracted with regarding the collection of your Account.** If wireless or cellular telephone numbers are associated with your Account, **you agree that we may place calls to those numbers which may result in charges from your wireless or cellular carrier**. You understand these calls could be automatically dialed and a recorded message may be played. You agree to such calls will not be unsolicited calls for purposes of state or federal law. You also agree that, from time to time, we may monitor telephone conversations between you and us to assure the quality of our customer service.

Email and SMS/Text Messaging. **You consent that we or in the event that your account is turned over to a third party for collections our agents may contact you via email to any email address associated with your account**. In addition, you consent that we may transmit SMS/text messages to any wireless telephone number associated with your account which may result in charges from your wireless carrier. Those charges will be reimbursed upon request and presentment of receipt(s) or bill(s). If you wish to opt-out from either email or SMS/text messages, please contact us at 702-873-4778. (emphases added)[4]

In addition, Plaintiff RODRIGUEZ twice completed "Verify your Cell Phone Number!" form that states:

I, Irma Rodriguez, Understand that First Choice Loans Would like to verify my cell phone number through text during this process.
You understand that any text we send may be accessed to anyone that has access to your texts.

---

3    Consumer Credit Disclosure- Promissory Note, attached as Exhibit "A".
4    Consumer Credit Disclosure- Promissory Note, attached as Exhibit "A".

1
2
3

You understand that the mobile phone provider may charge you fees for text messages that we send you, you agree that we have no liability for the cost of such text. [5]

***

4
5
6
7
8

I 702 689-0596, Understand that First Choice Loans Would like to verify my cell phone number through text during this process.
You understand that any text we send may be accessed to anyone that has access to your texts.
You understand that the mobile phone provider may charge you fees for text messages that we send you, you agree that we have no liability for the cost of such text. [6]

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Subsequently after receiving the money from Defendant, Plaintiff breached the agreement and failed to repay the money to Defendant. [7]  After Plaintiff breached the agreement, Defendant contacted Plaintiff by calling Plaintiff on the phone number that Plaintiff provided to Defendant. [8]  Defendant did not use an automatic dialer or use a program dialer to contact Plaintiff.  Furthermore, Defendant did not contact or attempt to contact Plaintiff more than twice in any day and did not attempt to contact Plaintiff before the 8 am or after 9 pm.[9]

In an attempt to verify where Plaintiff lived after she breached the agreement, Defendant went to Plaintiff's listed residence that she provided on the Consumer Credit Disclosure- Promissory Note.  On October 6, 2016, Defendant

24
25
26
27
28

---

5      Verify your Cell Phone Number! Dated November 17, 2015, attached as Exhibit "B" and Verify your Cell Phone Number! Dated March 22, 2016, attached as Exhibit "C".
6      Verify your Cell Phone Number! Dated November 17, 2015, attached as Exhibit "B" and Verify your Cell Phone Number! Dated March 22, 2016, attached as Exhibit "C".
7      Pretrial Order Stipulated Facts Paragraph 8.
8      Telephone call log, attached as Exhibit "D".
9      Telephone call log, attached as Exhibit "D".

contacted Plaintiff at her residence and provided her with a note to contact

Defendant FIRST CHOICE.  On October 12, 2016, Defendant left a note on

Plaintiff's house and did not have any contact with Plaintiff.[10]  It is important for

the Court to note that Plaintiff RODRIQUEZ's primary language is Spanish and

the individual who contacted Plaintiff does not speak Spanish and there is no

evidence that a conversation occurred in either language.[11]  The note states:

> We came by today to contact you.  Please call me at (702) 873-4778
> or come in as soon as possible.
> 1680 E. Flamingo Rd.
> Las Vegas, Nevada 89119[12]

Both visits to the residency occurred before 8:00 p.m.[13]

   In an attempt to avoid paying Defendant pursuant to Promissory Note,

Plaintiff filed the underlying Complaint against Defendant alleging that Defendant

violated the Fair Debt Collection Practices Act (hereinafter referred to as

"FDCPA"), Telephone Consumer Protection Act of 1991 and the Fair Credit

Reporting Act.  Subsequently, Plaintiff agreed to dismiss her allegations that

Defendant violated the Telephone Consumer Protection Action of 1991.  As

argued below, Defendant respectfully requests that this Court finds in favor of

Defendant on all of Plaintiff's claims.

---

10    First Choice Loans, note dated 10/12/2016, attached as Exhibit "E"
11    Pretrial Order Stipulated Facts Paragraphs and 12 and 13.
12    First Choice Loans, note dated 10/12/2016, attached as Exhibit "E"
13    Telephone call log, attached as Exhibit "D".

## II.
## ARGUMENT

**A.   PLAINTIFF HAS FAILED TO PROVIDE ANY EVIDENCE THAT DEFENDANT BREACHED EITHER THE FDCPA OR NRS 604A.415.**

Defendant FIRST CHOICE did not engage in any activity that violated the FDCPA or NRS 604A.415.  NRS 604A.415 states in part:

> **NRS 604A.415   Collection of defaulted loan; civil action to collect debt; venue.**
> 1.   If a customer defaults on a loan, the licensee may collect the debt owed to the licensee only in a professional, fair and lawful manner. When collecting such a debt, the licensee must act in accordance with and must not violate sections 803 to 812, inclusive, of the federal Fair Debt Collection Practices Act, as amended, 15 U.S.C. §§ 1692a to 1692j, inclusive, even if the licensee is not otherwise subject to the provisions of that Act.

At trial it is expected that Plaintiff will allege that Defendant FIRST CHOICE engaged in activities that violated 15 U.S.C. § 1692(d), but a close reading of this statute reveals that Defendant has not violated it.  More specifically 15 U.S.C. § 1692(d) states:

> 15 U.S.C. § 1692d - Harassment or abuse
>
> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (**1**)
> The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (**2**)
> The use of obscene or profane language or language the natural

consequence of which is to abuse the hearer or reader.
(**3**)
The publication of a list of consumers who allegedly refuse to pay
debts, except to a consumer reporting agency or to persons meeting
the requirements of section 1681a(f) or 1681b(3) [1] of this title.
(**4**)
The advertisement for sale of any debt to coerce payment of the debt.
(**5**)
Causing a telephone to ring or engaging any person in telephone
conversation repeatedly or continuously with intent to annoy, abuse,
or harass any person at the called number.
(**6**)
Except as provided in section 1692b of this title, the placement of
telephone calls without meaningful disclosure of the caller's identity.

1. **Defendant did not use or threaten violence or other criminal means to harm the physical person, reputation or property of Plaintiff.**

There has been no allegation that Defendant used or threatened violence against Plaintiff.  As the parties have stipulated, Plaintiff's primary language is Spanish and the individual who visited her house on two separate occasions on behalf of FIRST CHOICE speaks only English.[14]  Defendant FIRST CHOICE did not have any conversations with Plaintiff in either language.  The purpose of these visits was to verify where Plaintiff lived and give Plaintiff a note advising Plaintiff to contact FIRST CHOICE.  While Plaintiff may wish that the Court would interpret the note differently, the note simply states:

We came by today to contact you.  Please call me at (702) 873-4778
or come in as soon as possible.
1680 E. Flamingo Rd.

---

14      Stipulation 12 and 13 of the Pretrial Order

8

Las Vegas, Nevada 89119[15]

More importantly, the Note does not contain any threats. Out of the two visits to Plaintiff's property to verify residency, Defendant only made contact with Plaintiff one time.  The second time that Defendant went to verify Plaintiff's residency, Plaintiff was not home and Defendant left a note on the door. [16]

While it is evident that Plaintiff has a vivid imagination, what is not evident is what specific behavior did Defendant engage in that violated 15 U.S.C. § 1692d. FIRST CHOICE respectfully requests that this Court finds in favor of FIRST CHOICE on Plaintiff's first claim.

**2.  Defendant did not harass Plaintiff.**

Defendant did not harass Plaintiff.  Although the term "harass" is not defined in the FDCPA, the Act's legislative history sheds light on what abusive practices violate § 1692d:

> [O]bscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

Okyere v. Palisades Collection, LLC, 961 F.Supp.2d 508, 514 (S.D.N.Y., 2013)

There has been no allegation that Defendant used obscene or profane

---

15      First Choice Loans, note dated 10/12/2016, attached as Exhibit "E"
16      Telephone call log, attached as Exhibit "D".

language against Plaintiff.  Defendant only contacted Plaintiff between the hours of 8 a.m. and 9 p.m. and did not disclose RODRIGUEZ's personal affairs to her friends, neighbors or her employer.  As the parties have stipulated, Plaintiff's primary language is Spanish and the individual who visited her house on two separate occasions on behalf of FIRST CHOICE speaks only English.[17]

Plaintiff RODRIGUEZ has failed to produce any evidence that Defendant FIRST CHOICE engaged in harassing behavior against her.  FIRST CHOICE respectfully requests that this Court finds in favor of FIRST CHOICE.

**3. Defendant did not cause Plaintiff's telephone number to ring or engage in in any person in telephone conversation repeatedly or continuously**.

Subsequently after Defendant filed her Motion to Dismiss, Plaintiff acknowledged that she did not have any basis for her allegations that Defendant violated the Telephone Consumer Protection Act of 1991 and agreed to dismiss these allegations.[18]  Even if this Court were to give Plaintiff a second bite at the apple and allow Plaintiff to argue that Defendant called her repeatedly, there is no evidence to support this claim. Despite being requested during discovery, Plaintiff has refused and failed to produce any documents to support her claim that Defendant contacted Plaintiff repeatedly.  More specifically:

Request No. 6:     Please provide copies of any and all documents

---

17     Stipulation 12 and 13 of the Pretrial Order
18     ORDER Granting STIPULATION of Dismissal as to Counts II and III, on file with Court (Doc 27).

that support your allegation contained in Paragraph 30 that "FIRST CHOICE called the Plaintiffs cell phone from several unidentified or unknown numbers":

Response to Request No. 6: Plaintiff objects to this Request as overly broad and unduly burdensome.  Plaintiff further objects that this request is vague and ambiguous.  Plaintiff also objects to this Request as it seeks information in the custody, control and/or possession of the Defendant.

Subject to the General Objections, and without waiver of any objection, Plaintiff responds as follows: See Complaint, Initial Disclosures, and First Supplement to Initial Disclosures.  Discovery is ongoing and we will supplement these responses should additional information become available.[19]

Plaintiff has failed to produce any evidence to support her claim that Defendant FIRST CHOICE contacted her using unidentified or unknown numbers. More specifically, Plaintiff has failed to produce any phone records that would support her claim.  Discovery has been closed for several months and Plaintiff has produced absolutely nothing to support her claim.  FIRST CHOICE respectfully requests that this Court finds in favor of FIRST CHOICE on Plaintiff's first claim.

### 4.  Defendant did not engage in the placement of telephone calls without meaningful disclosure of the caller's identity.

Subsequently after Defendant filed its Motion to Dismiss, Plaintiff acknowledged that she did not have any evidence to support her allegations that Defendant violated the Telephone Consumer Protection Act of 1991 and dismissed

---

19    Plaintiff's Responses to Defendant's First Set of Requests for Production of Documents, attached as Exhibit "F"

these allegations.[20]  Based on this stipulation, the remaining allegations in

Plaintiff's complaint involve whether Defendant's two visits to Plaintiff's

residency violated Nevada debt collection law and whether Defendant violated the

Fair Credit Reporting Act by obtaining Plaintiff's credit report.  As such, none of

the existing allegations involve the placement of telephone calls without the

meaningful disclosure of the caller's identify, therefore this section does not apply.

**B.**    **PLAINTIFF NEVER ADVISED DEFENDANT IN WRITING TO STOP COMMUNICATING WITH HER REGARDING THE DEBT.**

Plaintiff RODRIGUEZ has alleged that she notified Defendant not to contact

her anymore regarding the debt; however, Plaintiff has failed to provide any

evidence that she notified Defendant in writing to stop contacting her. Pursuant to

15 U.S.C. § 1692c, if a consumer no longer wishes to be contacted by a debt

collector, the consumer must notify the debt collector in writing to cease all

communication.  More specifically 15 U.S.C. § 1692c states:

> 15 U.S. Code § 1692c - Communication in connection with debt collection
>
> (c) Ceasing communication.  If a consumer notifies a debt collector in **writing** that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may

---

20      ORDER Granting STIPULATION of Dismissal as to Counts II and III, on file with Court (Doc 27).

invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt. (emphases added)

A debtor consents to calls about "an existing debt" when he gives his number "in connection with" that debt, 23 F.C.C. Rcd. at 564 —including after his initial signing of the loan. Hill v. Homeward Residential, Inc., 799 F.3d 544 (6th Cir., 2015).  While debtors may "[t]ypically" give their cellphone number "as part of a credit application" at the beginning of the debtor—creditor relationship, see 23 F.C.C. Rcd. at 565 n. 36, it doesn't have to be that way. Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1122 (11th Cir. 2014); *see*, e.g., Sartori v. Susan C. Little & Associates, P.A., 571 Fed.Appx. 677, 683 (10th Cir.2014) (holding that the debtor gave his prior express consent, even though he didn't give his number until one year after debt was incurred).

The Court has held that a verbal request to cease debt collection calls to a cellular phone will not be sufficient to revoke "prior express consent" under the FDCPA. Moltz v. Firstsource Advantage, Inc., Case No. 08-CV-239S, 2011 WL 3360010, *5 (W.D.N.Y. Aug. 3, 2011) (because Congress has stated that debt collection efforts are governed by the FDCPA, **when calls to a cell phone are made for debt collection purposes, the FDCPA's requirement that a request to stop the calls be made in writing applies**) (emphases added); Starkey v.

13

Firstsource Advantage, LLC, Case No. 07-CV-662A, 2010 WL 2541756, *6 (W.D.N.Y. Mar. 11, 2010) (same), *see also* Cunningham v. Credit Mgmt., L.P., 2010 WL 3791104, *5 (N.D. Tex. Aug. 30, 2010).

In this dispute, 15 U.S. Code § 1692c is very clear, RODRIGUEZ was required to contact FIRST CHOICE in writing to advise FIRST CHOICE not to communicate with her anymore.  RODRIGUEZ has not produced any documentation showing that she contacted FIRST CHOICE in writing and notified FIRST CHOICE not to contact her.  As such, RODRIGUEZ has failed to demonstrate that she notified FIRST CHOICE in writing to stop contacting her. FIRST CHOICE respectfully requests that this Court finds in favor of FIRST CHOICE on Plaintiff's claim that Defendant violated Plaintiff's rights under FDCPA.

## C. DEFENDANT DID NOT ENGAGE IN HARASSING BEHAVIOR WHEN IT CONTACTED PLAINTIFF.

Defendant can contact Plaintiff regarding an outstanding debt several times a day and not be engaged in harassing behavior.  In reviewing this issue, Courts have gone as far as asserting that even daily phone calls, without other abusive conduct are insufficient to raise a triable issue of fact for the jury. *See* Saltzman v. I.C. Sys., Inc., No. 09–10096, 2009 WL 3190359, at *7 (E.D.Mich. Sept. 30, 2009) ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

unaccompanied by any oppressive conduct such as threatening messages.");
Arteaga v. Asset Acceptance, LLC, 733 F.Supp.2d 1218, 1229 (E.D.Cal.2010)
(finding that "daily" or "nearly daily" phone calls alone fail to raise an issue of fact
for a jury to determine whether the conduct violates § 1692d and § 1692(d)(5));
Tucker v. CBE Grp., Inc., 710 F.Supp.2d 1301, 1305 (M.D.Fla.2010) (noting that
despite 57 calls over a 20–day period being "somewhat high," the conduct still did
not violate § 1692(d)(5) as a matter of law where defendant left six messages,
made no more than seven calls in a single day, and did not call back the same day
after leaving a message); Durthaler v. Accounts Receivable Mgmt., Inc., 854
F.Supp.2d 485 (S.D.Ohio 2012) (finding no FDCPA violation even though debt
collector made 30 calls to debtor's phone numbers, one of which was made after
the debt collector was informed that the number did not belong to the debtor, and
two calls to debtor's roommate in 73 day period); Katz v. Capital One, No. 1:09–
cv–1059, 2010 WL 1039850 (E.D.Va. March 18, 2010) (15–17 calls, not more
than two in a day and not at inconvenient times, after debtor notified debt collector
of attorney representation did not violate the FDCPA).

An intrusion, whether by virtue of persistence or character, "must rise to the
level of what a reasonable person would find 'highly offensive.'" Imagine Medispa,
999 F. Supp. 2d at 886 (quoting Restatement (Second) of Torts § 652B cmt. d
(1977)("It is only when the telephone calls are repeated with such persistence and

15

frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.").

In this dispute, Plaintiff has failed to produce any evidence to show that Defendant has contacted her beyond what has previously been held as reasonable. Defendant contacted Plaintiff only occasionally and did not repeatedly call Plaintiff every day or leave any type of threating or intimidating messages. Defendant FIRST CHOICE respectfully requests that this Court finds in favor of Defendant on Plaintiff's first cause of action.

**D.    DEFENDANT FIRST CHOICE DID NOT MAKE FALSE, DECEPTIVE OR MISLEADING STATEMENTS TO PLAINTIFF RODRIGUEZ.**

Defendant did not make any false, deceptive or misleading statement to Plaintiff RODRIGUEZ.  The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, 15 U.S.C. § 1692e(2) prohibits "[t]he false representation of ... the character, amount, or legal status of any debt."  "In evaluating the tendency of language to deceive, the Court should look not to the most sophisticated readers but to the least." Baker v. G. C. Servs. Corp., 677 F.2d 775, 778 (9th Cir. 1982).  The FDCPA does not ask the subjective question of whether an individual plaintiff was actually misled by a communication; rather, it asks the objective question of whether the hypothetical

least sophisticated debtor would likely have been misled.  <u>Afewerki v. Anaya Law Grp.</u>, 868 F.3d 771 (9th Cir., 2017) "If the least sophisticated debtor would likely be misled by a communication from a debt collector, the debt collector has violated the Act." <u>Guerrero v. RJM Acquisitions LLC</u>, 499 F.3d 926, 934 (9th Cir. 2007) The Court has recognized that "the least sophisticated debtor may be uninformed, naive, and gullible." <u>Tourgeman v. Collins Fin. Servs., Inc</u>., 755 F.3d 1109, 1119 (9th Cir. 2014). To be sure, "her interpretation of a collection notice cannot be bizarre or unreasonable," but it is still the perspective of the least sophisticated debtor that counts. <u>Afewerki</u>, 868 F.3d at 775 *quoting* <u>Tourgeman</u>, 755 F.3d at 1119.

In <u>Donohue v. Quick Collect, Inc.</u> (cited *infra*), the 9th Circuit adopted the materiality requirement as a "corollary" to the least sophisticated debtor standard. <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1033 (9th Cir. 2010).  The Court held "that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §1692e." <u>Id</u>. at 1033. Material false representations, are those that could "cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." <u>Davis v. Hollins Law</u>, 832 F.3d 962, 966 (9th Cir. 2016).  Immaterial false representations, by contrast, are those that are "literally false, but meaningful only to the 'hypertechnical' reader." <u>Id</u>

Plaintiff has not produced any evidence that Defendant FIRST CHOICE made any material misrepresentations to her.  Plaintiff acknowledges that she borrowed money from Defendant FIRST CHOICE and that she failed to repay it. Furthermore, Plaintiff has not disputed the amount that Defendant FIRST CHOICE claims is owed on the account.  Plaintiff has failed to produce any evidence that Defendant FIRST CHOICE made any material misrepresentations to Plaintiff. Under the standard adopted in <u>Donohue</u>, Plaintiff is unable to demonstrate that Defendant made any material misrepresentations to her.  Defendant respectfully requests that this Court find in favor of Defendant on Plaintiff's first claim.

**E.     DEFENDANT HAD A PERMISSIBLE USE AND DID NOT VIOLATE THE FAIR CREDIT REPORTING ACT**

Defendant FIRST CHOICE had a permissible purpose for pulling Plaintiff's credit report.  Under the purview of the FAIR CREDIT REPORTING ACT (hereinafter "FCRA"), "collection of an account of the consumer is a "permissible purpose" for requesting a consumer report. 15 U.S.C. § 1681b(a)(3)(A).

To prove a violation of section 1681b, a plaintiff must show that credit information was obtained for an impermissible purpose. A showing of a permissible purpose is a complete defense.  <u>Stonehart v. Rosenthal</u>, 2001 WL 910771, *3 (S.D.N.Y. August 13, 2001)(*citing*, <u>Advanced Conservation Sys. Inc. v. Long Island Lighting Co.</u>, 934 F.Supp. 53, 54 (E.D.N.Y. 1996)); <u>Korotki v. Attorney Servs. Corp. Inc</u>, 931 F.Supp. 1269, 1275 (D.Md. 1996), aff'd, 131 F.2d

135 (4th Cir. 1997))  The fact that a consumer report is furnished for an impermissible purpose does not result in automatic liability. <u>Dobson v. Holloway</u>, 828 F.Supp. 975, 977 (M.D. Ga 1993).

A debt collector is permitted to obtain a consumer report if it does so for the purposes of collecting a debt. *See* 15 U.S.C. § 1681b(a)(3)(A); <u>Morgovsky v. Creditor's Collection Service of San Francisco</u>, 92 F.3d 1193 (9th Cir 1996). "[O]ne of the 'permissible purposes' for obtaining a consumer report under 15 U.S.C. § 1681b(a)(3)(A) would permit a collection agency retained by a creditor to collect on an account of the consumer." <u>Hinkle v. CBE Grp.</u>, No. CV 311-091, 2012 WL 681468, at *3 (S.D.Ga. Feb. 3, 2012).  Therefore, if a creditor retains a debt collector to collect a debt owed by a consumer, that debt collector has a permissible purpose for obtaining that consumer's consumer report, whether or not Plaintiff personally did business with this specific Defendant. *See* <u>Hinkle</u>, 2012 WL 681468, at *3.

As long as the debt collector has "reason to believe" the consumer owes the debt, the debt collector may permissibly obtain the consumer's credit report without violating the FCRA. <u>Korotki v. Attorney Services Corp. Inc.</u>, 931 F.Supp. 1269, 1276  (D. Md., 1996).  (holding that the "reason to believe" standard applies in evaluating whether a user had a permissible purpose).  To prove a violation of the FCRA, plaintiff must show that defendants had an impermissible purpose in

obtaining the credit report or, in other words, that they lacked a permissible purpose.  Id.  The FCRA does not limit authorized users' access to credit information, as long as the user has a permissible purpose may obtain a consumer report.  Id, *see also* Hasbun v. County of Los Angeles, 323 F.3d 801 (9th Cir., 2003) (holding that the case law addressing this issue has uniformly held that creditors have a permissible purpose in receiving a consumer report to assist them in collecting a debt.)

In Korotki, the debt collector obtained the consumer's credit report to obtain the consumer's current address.  Korotki v. Attorney Services Corp. Inc., 931 F.Supp. 1269, 1276  (D. Md., 1996).  The consumer then brought an action against the debt collector alleging that the debt collector did not have permissible use to obtain the consumer's credit report because there were other avenues available to the debt collector to obtain the address and the debt collector did not have to obtain the credit report.  Id.   In finding that debt collector did not violate the FCRA, the Court held that even assuming the Debt Collector could have obtained the information it needed from a less comprehensive summary, the FCRA does not limit authorized users' access to credit information.  Id. A user who has a permissible purpose may obtain a consumer report.  Id.  This is clear in light of the language of § 1681b that a report may be issued for the `review or collection of an account.'  Id, *see also* Shah v. Collecto, Inc., No. CIV 2004–4059, 2005 WL

2216242, at *12 (D.Md. Sept. 12, 2005) ("[I]f a user had a reason to believe that a consumer owed a debt, it would have a permissible purpose to access the consumer's credit report.").

The Court has extended the permissible use category to even include debt collectors who are considering whether to obtain the debt account.  In <u>Baker v. Bronx-Westchester Investigations, Inc.,</u> (cited *infra*) the Court stated:

> For purposes of 15 U.S.C. § 1681b, we find no material distinction between the hiring of an investigator to actually collect a judgment, and the hiring of an investigator to locate the debtor so that judgment may thereafter be collected.

<u>Baker v. Bronx-Westchester Investigations, Inc.</u>, 850 F.Supp. 260, 264 fn. 5 (S.D.N.Y., 1994)

Defendant **WAS** and **IS STILL** in the process of collecting on the Promissory Note that Plaintiff signed. (emphases added)  Plaintiff's filing of an FDCPA violation complaint against Defendant does not stop, prohibit or prevent Defendant FIRST CHOICE from pursing Plaintiff RODRIGUEZ for the outstanding promissory note.  As the Court stated in <u>Robles v. Ally Bank,</u>(cited *infra*) these two claims are separate and distinct from each other.  <u>Robles v. Ally Bank</u>, 2013 U.S. Dist. LEXIS 417, 4 (S.D. Cal. Jan. 2, 2013).  More specifically the court states in <u>Robles</u>:

> While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relation to one another … the suit on the

debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts.

Id.; *citing* Peterson v. United Accounts, Inc. 638 F.2d 1134, 1136-1137 (8th Cir. N.D. 1981).

In this dispute, Defendant FIRST CHOICE had a permissible purpose for obtaining a copy of Plaintiff's credit report.  Defendant FIRST CHOICE obtained the credit report for purposes of collecting on the debt.  Defendant is still actively entitled to collect on the Promissory note and therefore is entitled to pull Plaintiff's credit report to assist Defendant's collection efforts.  Defendant FIRST CHOICE respectfully requests that this Court finds in favor of Defendant on Plaintiff's second claim.

1

## III.
## CONCLUSION

2

3        Based on the foregoing arguments, Defendant respectfully requests that this

4   Court finds in favor of Defendant on all of Plaintiff's claims.

5        DATED this 16th day of April, 2018

6
                                    LAW OFFICE OF ANDREW H. PASTWICK L.L.C.
7

8                               By:/S/ Andrew H. Pastwick
9                                   Andrew H. Pastwick, Esq.
                                    Nevada Bar No. 009146
10                                  1810 E. Sahara Avenue, Suite 120
                                    Las Vegas, Nevada 89104
11                                  (702) 866-9978
                                    Attorney for Defendants
12                                  Your First Choice, LLC dba First Choice Payday Loan

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b), I certify that I am an employee of the Law Office of Andrew H. Pastwick, and not a party to, nor interest in, the within action, that on April 16th, 2018, a true and correct copy of the foregoing DEFENDANT YOUR FIRST CHOICE, LLC D/BA FIRST CHOICE PAYDAY LOAN'S TRIAL BRIEF was served via pacer to:

David H. Krieger, Esq.
Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

Matthew I. Kneppper
Knepper & Clark, LLC
10040 W. Cheyenne Ave, Suite 170-109
Las Vegas, Nevada 89129


                                        /S/ Andrew H. Pastwick
                                        An Employee of Law Office of Andrew H. Pastwick L.L.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit Index**

| Document | Exhibit |
|---|---|
| Consumer Credit Disclosure- Promissory Note | Exhibit "A" |
| Verify your Cell Phone Number! Dated November 17, 2015 | Exhibit "B" |
| Verify your Cell Phone Number! Dated March 22, 2016 | Exhibit "C" |
| Telephone call log | Exhibit "D" |
| First Choice Loans, note dated 10/12/2016 | Exhibit "E" |
| Plaintiff's Responses to Defendant's First Set of Requests for Production of Documents | Exhibit "F" |