Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorneys for Plaintiff
IRMA RODRIGUEZ

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IRMA RODRIGUEZ,<br><br>              Plaintiff,<br><br>        v.<br><br>YOUR FIRST CHOICE, LLC D/B/A FIRST CHOICE PAYDAY LOAN,<br><br>              Defendant. | **Case No.:** 2:16-cv-02447-APG-CWH<br><br>**PLAINTIFF'S TRIAL BRIEF** |

### I.   STATEMENT OF THE CASE

In this case against Your First Choice, LLC d/b/a First Choice Payday Loan ("Defendant") for violations of Nevada's Payday Lender Law, NRS 604A.415, and the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681, et seq. NRS 604A.415 incorporates the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a to 1692j.[1] In this regard, this action is informed by the FDCPA §§ 1692c (communication in connection with debt collection), 1692d (harassment), 1692e (false or misleading representations), and 1692f (unfair practices). The FCRA's provision limiting the permissible purposes for a credit pull, 15 U.S.C. § 1681b(a), (f), are also at issue because several months after this litigation commenced, Defendant pulled Plaintiff's consumer report from Transunion, but at that point had no account relationship sufficient to satisfy any permissible purpose under section 1681b.

On October 25, 2017, this Court denied Defendant's Motion for Summary Judgment.[2] Trial is set currently for the April 23, 2018 trial stack before this Court.

## II.   STATEMENT OF FACTS

In November 2015, Plaintiff incurred a pay day loan (the "Debt") to Defendant. The Debt was a "high-interest loan" as defined by NRS 604A.0703 (defining high interest loan as one which charges an annual percentage rate of more than 40 percent)[3]; the interest rate on the Debt was over 166 percent.[4] Pursuant to stipulation between the parties, the following facts are not in dispute: (1) Defendant is a "licensee" within the meaning of NRS 604A.075; (2) Defendant is a "debt collector" under the FDCPA; (3) Defendant, through its management, authorized the doing and the manner of the acts alleged in this action; and (4) Ms. Rodriguez defaulted on the Debt when she lost her employment.

Thereafter, FIRST CHOICE engaged in a series of debt collection practices through a series of collection calls and unannounced "field visits" to Ms. Rodriguez's home. Ms. Rodriguez is a single mother of a four-year-old, both of whom were terrified by Defendant's visits to her

---

[1] NRS 604A.415(1).
[2] ECF No. 31.
[3] NRS 604A.0703.
[4] *See* YOUR CREDIT Promissory Note, **ECF No. 22,** at 37.

home. Ms. Rodriguez pleaded with Defendant several times over the phone to stop its abusive collection conduct, and give her a chance to get back on her feet so that she could make payments on the Debt.

On January 18, 2017, Defendant pulled Plaintiff's consumer report from Transunion, ostensibly because it "lost contact" with Ms. Rodriguez. Plaintiff withdrew any consent to Defendant's credit pulls when she filed the instant action. On January 18, 2017, both parties were represented by counsel, discovery in this action had commenced, and "contact" with Ms. Rodriguez was readily available, though subject to this Court's orders.

### III. ISSUES TO BE RESOLVED AT TRIAL

**A. Whether Defendant acted unprofessionally, unfairly, or in an unlawful manner when it continued calling Ms. Rodriguez repeatedly, and made unannounced "field visits" to her home late in the evening, thus violating Nevada's Payday Lender Law.**

NRS 604A.415 provides that following default of a payday loan, a licensee under Ch. 604A may collect the debt, but must do so in a professional, fair and lawful manner, while also conducting itself in accordance with, among other things, the FDCPA's prohibitions. The FDCPA measures a debt collector's behavior according to an objective "least sophisticated debtor"[5] standard to ensure that all consumers are protected.[6] As a licensee under NRS 604A, Defendant was required to comply with the FDCPA or be held strictly liable for violating it.[7] In this regard, the issues presented at trial are as follows:

Section 1692c(a) of the FDCPA prohibits any communication at any unusual time or place that the licensee knows or should know to be inconvenient to the consumer. The evidence will show that on several occasions, Defendant sent a collector to the Plaintiff's home late in the

---

[5] *Trull v. GC Servs. Ltd. P'ship*, 961 F. Supp. 1199 (N.D. Ill. 1997) (level of sophistication of consumer irrelevant when determining whether unlawful harassment occurred).
[6] *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).
[7] *See e.g.*, *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 997 (9th Cir. 2012).

evening, where she and her four-year-old child reside. Each time the collector arrived, Ms. Rodriguez felt intimidated and harassed, and told the Defendant as much, demanding that Defendant not make further field visits. At minimum, this was sufficient to put Defendant on notice that the field visits were at an unusual time and place. Further, the evidence will show that Plaintiff *never* consented to field visits, and the agreement between the parties omits any reference to them. When Defendant continued its unwanted and intimidating field visits, it did so in an unprofessional and unfair manner, and did so in an unlawful manner because it ran contrary to the FDCPA's protection under subsection 1692c(a)(1).

Section 1692d generally protects consumers from harassing or abusive debt collection practices. At issue in this case are subsections 1692d(5)-(6). Subsection 1692d(5) prohibits a licensee from making telephone calls repeatedly with intent to annoy, abuse or harass a consumer. Subsection 1692d(6) prohibits a licensee from disclosing its identity to the consumer when making collection calls. The evidence will show that Defendant failed in both respects when it knowingly made repeated calls to Plaintiff even after she informed Defendant that she lost her job, had no present ability repay at the current payment level, and even offered lower payments until she was back on her feet and able to resume her full repayment obligation. The evidence will also show that Defendant knew Ms. Rodriguez spoke little English and that Spanish was her primary language. Nevertheless, it repeatedly sent an agent on field visits who didn't speak Spanish, and was large and imposing, resulting in tremendous fear, frustration and confusion for Ms. Rodriguez. The evidence will show that because Defendant continued calling Plaintiff incessantly thereafter, it did so with the intent to harass Plaintiff. These failures were unprofessional and contrary to law.

Section 1692e generally prohibits licensees from making false or misleading representations to a consumer in connection with debt collection. At issue in this case are subsections 1692e(5) & (10). Subsection 1692e(5) prohibits licensees from threatening any illegal action. Subsection 1692e(10) prohibits licensees from use of any false representation or deceptive means to collect a debt. The evidence will show that Defendant violated these provisions when it represented that it could keep communicating with her even after she instructed Your First Choice

to cease any further calls or field visits until she was in a financial position to repay the debt. Accordingly, Defendant acted unprofessionally and unfairly when it misrepresented its right to continue making contact with Plaintiff, particularly in regard to its right to continue "field visits" to her home.

### B. Whether Defendant violated the FCRA when it pulled her Transunion consumer report three months after commencement of the instant action.

Under the FCRA, a person may only pull a consumer report for another person under limited circumstances. Section 1681b(a) provides six exclusive permissible purposes, of which only paragraphs (2)-(3) are at issue in this action. Paragraph (2) allows a pull in accordance with the written instruction of the consumer to whom the report relates, while paragraph (3)(A) allows a pull in connection with a review or collection of an account of the consumer. Neither are applicable here, where litigation commenced well= before the pull at issue. As Judge Du reasoned recently:

> The FCRA is clear that account review inquiries are permissible to determine whether the consumer *continues* to meet the terms of the account. 15 U.S.C. § 1681b(a)(3). The operative word in this provision is "continues," which indicates Congress recognized that once an individual terminated her relationship with a lender it was no longer permissible for the lender to access the account—precisely because the lender would have no reason for doing so.[8]

Defendant will assert that it made the pull because it "lost contact" with Ms. Rodriguez; ostensibly the purpose was for debt collection. However, the evidence will show that in or about early November 2016, Defendant had noted internally that it was not to make contact with Ms. Rodriguez, and continued to note this fact through late December 2016. The idea that it "lost contact" with Ms. Rodriguez is also directly undercut by the fact that Defendant was represented

---

[8] *In re Ocwen Loan Servicing LLC Litig.*, No. 3:16–cv–00200–MMD–WGC, 2017 WL 1289826, at *5 (D. Nev. Mar. 3, 2017).

by counsel who on January 4, 2017, contacted Plaintiff's counsel notifying Plaintiff of his representation, and on February 6, 2017 served Ms. Rodriguez with twenty interrogatories, twenty-five requests for admission, and twenty-five requests for production.  In other words, the evidence will show that Defendant had no permissible purpose under the ruse of "lost contact."

### IV.  RELIEF REQUESTED

**A.  Actual damages for emotional distress.**

In *McCollough v. Johnson, Rodenburg & Lauinger, LLC* the Ninth Circuit sustained the jury award of actual damages, noting that at the close of the evidence, the trial judge issued the following jury instructions with respect to damages available under the FDCPA:

> Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.
>
> The law does require, however, that when making an award for mental and emotional suffering and distress you should exercise calm and reasonable judgment. The compensation must be just and reasonable.[9]

Here, the Nevada Payday Lender Law authorizes actual damages for violations of its provisions,[10] and although this provision is without meaningful caselaw interpreting its scope, the FDCPA is an appropriate analogue by which to measure appropriate actual damages.  Similarly, the FCRA authorizes actual damages.[11]  Under the FCRA, 'actual damages' includes recovery for emotional distress and humiliation."[12]

---

[9] 637 F.3d 939, 957 (9th Cir. 2011)
[10] NRS 604A.930(a).
[11] 15 U.S.C. § 1681o.
[12] *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Here, the evidence will show that Ms. Rodriguez suffered emotional distress when Defendant invaded her privacy both and intentionally intimidated and harassed her repeatedly through its campaign of calls, field visits, and credit pull. Ms. Rodriguez is entitled to actual damages for emotional distress suffered as a result of Defendant's conduct.[13]

**B. Punitive Damages**

Nevada's Payday Lender Act also provides for punitive damages.[14] In order to recover punitive damages, a plaintiff must show the defendant acted with oppression, fraud or malice.[15] Oppression is a conscious disregard for the rights of others constituting cruel and unjust hardship.[16] "Conscious disregard" is defined as "the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences."[17] Malice is conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights and safety of others.[18] In order to establish that a defendant's conduct constitutes conscious disregard, the conduct must at a minimum "exceed mere recklessness or gross negligence."[19]

Similarly, the FCRA authorizes punitive damages for "willful" violations of its provisions. A "willful" violation under the FCRA includes "not only knowing violations of a standard, but reckless ones as well."[20] A defendant acts in reckless disregard if the defendant's action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was

---

[13] *McCollough,* 637 F.3d at 957 (9th Cir. 2011).
[14] NRS 604A.930(b).
[15] *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1263 (D. Nev. 2016), *appeal dismissed,* No. 16-16542, 2017 WL 3923364 (9th Cir. Mar. 20, 2017) (citing *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F.Supp. 1237, 1250 (D.Nev.1994)).
[16] *Id*. (citing *Ainsworth v. Combined Ins. Co. of America*, 104 Nev. 587, 763 P.2d 673, 675 (1988)).
[17] NRS 42.001(1).
[18] See NRS 42.005(1).
[19] *Shaw*, 201 F.Supp. 3d at 1263 (quoting *Pioneer Chlor Alkali Co.*, 863 F.Supp. at 1251).
[20] *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 (2007).

merely careless."[21] That is, the defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that it should be known."[22]

Here, the evidence will show that Defendant engaged in oppressive and malicious behavior. Ms. Rodriguez suffered emotional distress when Defendant invaded her privacy and intentionally intimidated and harassed her repeatedly through its campaign of calls, field visits. The evidence will also show that Defendant ran a risk substantially greater than a merely careless understanding of its permissible purpose for pulling Ms. Rodriguez's consumer report. Ms. Rodriguez accordingly seeks punitive damages.

**C. Costs, expenses of litigation, and reasonable attorney's fees pursuant to NRS 604A.930(1)(c), 15 U.S.C. §§ 1681n, and 1681o.**

Given the structure of these sections, attorney's fees should not be construed as a special or discretionary remedy; rather each provision mandates an award of attorney's fees as a means of fulfilling the Nevada Legislature and Congress's intent that the Acts should be enforced privately. Plaintiff anticipates submitting an appropriate bill for fees and costs following trial.

///

---

[21] *Id.* at 69.
[22] *Id.* at 68 (quoting *Farmer v. Brennan,* 511 U.S. 825, 836 (1994)).

Dated: April 17, 2018

/s/ *Matthew Knepper*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
Rachel B. Saturn
Nevada Bar No.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2018, a true and correct copy of the foregoing PLAINTIFF'S TRIAL BRIEF was served on counsel of record by emailing a copy of the aforementioned by CM/ECF Notification:

Andrew H Pastwick
Andrew H. Pastwick, L.L.C.
apastwick@pastwicklaw.com

ATTORNEY FOR DEFENDANT
YOUR FIRST CHOICE, LLC D/B/A FIRST CHOICE PAYDAY LOAN

\_\_/s/ Matthew I. Knepper\_\_\_
An employee of Knepper & Clark, LLC